Good morning, may it please the Court. I'm Jeffrey Ehrlich for the POWER PLAY appellants. I'd like to start with an area of agreement between the parties that I think has been obscured by the briefing. And that is that both parties agree that the jury's allocation of fault in this case is significant and should dictate the outcome of this appeal and of this case. I don't think – well, our position is very clear, is that the allocation of fault should be reflected in the application of Insurance Code Section 533. So that some portion of the judgment is not deemed to be – is deemed to be insurable and the entire judgment is not uninsurable. I think what's subtler is HARTFORD's position. HARTFORD wants to rely on the allocation of fault. It's the allocation of fault in the judgment that lets HARTFORD say, this judgment shows that there's direct liability here and not respondeat superior liability. And therefore, the exception under Section 533 in Downey Venture, which allows a policy to cover malicious prosecution when liability is imposed under a respondeat superior theory, doesn't apply. So they are relying on the allocation of fault in the judgment, but they won't take a position and they won't tell you why Section 533 should not be applied on a comparative fault basis. Let me ask you about the stipulation. If – this is the stipulation that she was the agent for the company. Yes, Your Honor. If the state court judge intended to give effect to that stipulation, wouldn't the state court judgment have been that the company was liable for its own 30 percent and also under the stipulation liable for she's 70 percent? On a pure respondeat superior theory, yes. It seems to me that the problem – I was with – as I'm reading the brief, I was with you all the way until I get stuck on the fact that the state – for whatever reason, the state court judge chose not to do that. And that seems to be the end of the line. I don't think it is the end of the line. I think it – that creates the problem that allows HARTFORD to say, if you look at Section 533, there's no coverage whatsoever. I don't think it affects the argument that I'm making, which is that given the way that the judgment was entered, putting aside the stipulation, just giving the allocation of fault that shows that there is some portion of this judgment, about $4.2 million of liability for the economic damages that the insured, cables, has been held liable to pay that is not based on its own fault because it has been held jointly and severally liable for the entire amount of the economic damages, even though it's only – the fault allocated to it is 30%, 1.8 million. That means that there is $4.2 million of liability in this judgment that is not represented by cables' own fault. It's represented on cables being liable for the fault of she. And our argument is that that aspect of the judgment should be covered. It should not be made uninsurable by Section 533, that you don't have to get to the stipulation or get to the judgment because I think that California's comparative fault principles should be applied in the application of Section 533. Excuse me. Haven't we dropped – again, we're going down. This is the last case. We're talking about duty to defend. We're not talking about ultimate indemnity, nor are we talking about contribution between joint tort fees. We are talking about indemnity. Here you are. You're talking about indemnity, but the indemnity arises out of the judgment that was issued, which was your format of however it was. Right. They found joint and sever liability on both parties. Right. And then under California law it said it was 70-30 or 60-40. Yes. Which they took then and allocated a direct responsibility to each one of those parties, cable 40 and the other one 60. Yes. Whether they have joint and several liability or whether they have to pay each other, whoever's got the money is not relevant. What's relevant is that they found that cable was directly liable for 40%. I think – I mean, it's undisputed what the judgment says. I think that the issue is what does that mean in the context of the application of Section 533? Well, if you're directly liable for 40% of this intentional act, then 543 would apply, wouldn't it? Why doesn't it apply? I think it should apply to the portion that you're held accountable for. But to the extent that there is liability against you that's based on the act of someone else that you're held liable for and you have to pay for, I see no reason in the language of the policy, no language in the language of Section 533 or in the public policy of 533, or the cases that have applied it, to say that every aspect of the judgment, if you were 1% at fault, directly liable, that all of a sudden you lose all of your insurance coverage. That's the point that we're making. The policy says that it covers the damages incurred as a result of personal liability, personal injury, rather. Who was insured in that? Cables. Was she insured? I think he was given a defense. I don't know. He may have been another insured under the policy. If cable is directly liable under the judgment, maybe I'm missing something here, for 40% of the total damages. Yes. And if they're the insured and if they're directly liable, why doesn't 544 pertain to that 40%? It does pertain to the portion that they're liable for. Yeah, but how do you expand that any further? Because they're held liable for economic damages, jointly and separately liable, of about $8 million. Then the California law kicks in and says you've got to allocate that, which you did in your judgment. So you end up with a joint and several liability converted to a direct liability of 40%. The rest is joint tort fees or taking care of each other if somebody pays more. So the joint and several only resulted in 40% direct liability for this intentional act of your client, period. I don't know that I'm fully understanding. I want to make sure and take you through it. I might be confused. Okay. The judgment allocates fault 70-30 with respect to the balance of this judgment. And then under California law, the economic damages, both parties are liable for the entire amount jointly and severally. For the non-economic, each party's liability is allocated. But for the economic damages under Prop 51, both sides are fully liable for the entire amount that the jury awarded in the judgment. How do you separate if they're fully liable? That only means that the contribution between the two may be decided by subsequent action. That means that all of the money could be collected from cable. Here the only issue is we have a million-dollar policy. That was the only asset at issue in this litigation. And there is the question is, is the entire judgment, every aspect of the judgment made uninsurable by Section 533? Does the fact that the insured is 1% liable? I mean, Hartford is applying Section 533 the way courts used to apply the doctrine of contributory fault. If you're 1% liable, then you lose everything. The question is if you're 1% liable here or 30% liable, do you lose all of your insurance coverage? An argument is you should only lose the 30% of coverage that's available. To the extent that there is a portion of the judgment that holds you liable for someone else's conduct that isn't your conduct, then that portion should be insurable. And there's no reason why 533 would bar recovery or bar the insurance company from paying that aspect of the judgment. That's just a windfall to the insurance company, and it punishes the victim. But it doesn't achieve the purposes of Section 533. Let me make sure I haven't oversimplified it and have followed this up. The company was found to be 30% responsible. Yes. Correct? That part is not covered. Yes. Am I right? That's not covered. Yes. She was found to be 70% liable. Yes. And your theory is that Cables is vicariously responsible for that 70%. Yes. And the state judge, for whatever reason, didn't do it that way. Judgment didn't get entered. Well, isn't that the end of the ballgame? No, because the judgment itself shows. You don't have to look behind the judgment. You can look at the judgment. See, I'm used to judgments if one party is vicariously liable for the actions of another, the judgment goes against the party who's vicariously liable. Here, the state judge didn't do that. For whatever reason, in state court, the judge said, I'm not going to impose vicarious liability here. But the parties didn't want a position, to be in a position where there was a malicious prosecution judgment. It wasn't allocated at all. Then Harford would say, ah, but 533 would bark. There would have to be relitigation of who was responsible. So there was an allocation. Our position is that you can look in this judgment and see that a portion, 70% of the economic damages, that Cables is having to pay should be insurable, because it's not based on its own wrongdoing. And so the only reason that Hartford doesn't have to pay something is because of Section 533. That's the bar. It's not the policy language. Are Cables going to pay that 70%? Cables is bankrupt. The only issue— No, let's say they're flush. Are they going to pay that 70%? Are they liable under the judgment for it? Yes, they could. How could they be liable? How could they be liable? They've allocated it. The judgment makes both parties jointly and severally liable for the economic damages, irrespective of the amount of fault that's allocated. In a subsequent litigation, assuming a hypothetical world where Cables had money, they could get the money back. The question is, is that portion insurable? If you'd never gone in and asked for the judgment to allocate, I might follow you there. But once the allocation was made, the joint and several was just the first step. The second step, somebody asked to do that. I don't know who did, but they did it. You didn't have to ask to allocate it. You could have fought it out for another litigation. Instead, you said, let's settle it right here. Let's find out who's going to pay what. I understand. And the only issue I'd ask the Court to consider is that in construing Section 533, is there any reason why it should not be allocated on a comparative fault basis? Okay. Thank you, Mr. Early. Good morning, Your Honors. Good morning. Perhaps I can help a little bit. Could we get your name for the record, please? Yes, I'm sorry. Dean Herman on behalf of Hartford. Thank you. Now, I didn't want to confuse this. I thought I looked pretty straightforward at it, but then maybe I confused myself. I mean, maybe you can help us on that. I think so, and I don't think you're confused. I think this is fairly basic. I think there are a number of fatal flaws in their position. The first is this starts with basic California tort law, which is a tortfeasor is liable for all of the damage proximately caused by the tortfeasor's conduct. Cables is a tortfeasor. Cables' own direct conduct proximately caused all of the damage. That's California law. The next step, I suppose, would be to say, well, what happens when you have concurrent tortfeasors, two direct actors? Each one is still directly liable for 100 percent of the damage directly proximately caused by their own conduct. Now, if we stopped right there and the judgment was there, then they'd fight it out somewhere else about someone saying, I'm not going to pay it all. But then somebody asks that the judgment go further and allocate the damages. Right. Then we have two concurrent tortfeasors. Each alone or together, they cause the same damage, all of the damage. So Cables, as a direct tortfeasor, is liable for all of it. It's not vicarious. They're directly liable. What happened was at some point the legislature in California decided that for non-economic damages, they were going to create an exception. They were going to reduce liability for non-economic damages to the extent a concurrent tortfeasor also shared in the fault. There's no vicarious liability. Nobody's piling on additional responsibility to Cables. In fact, they took away some. So Cables is and always was directly liable for all of the damages. That's basic California tort law. And I think that the confusion that's being created is equating joint and several liability with responding as superior. They're different concepts. Joint and several liability can result when there's concurrent tortfeasors. It can also result where there's a clear or traditional responding as superior situation. And all of this is laid out very well in the American Motorcycle case. So I think that the fundamental flaw in the position being taken by appellants is the assumption or presumption that somehow there's fault being put on Cables that isn't theirs. That's not true. Cables is directly reliable for all of the damage proximately caused by its conduct. The second fatal flaw is California law and public policy is actually very clear. There's a long history of intermediate appellate decisions which basically prohibit coverage for willful acts and have found that malicious prosecution is by definition a willful act for that purpose. The Downey Ventures case, which the appellants rely on, says repeatedly throughout the opinion, for example, quote, personally committed an act of malicious prosecution, close quote. It is against public policy to allow insurance coverage for an insured witch, quote, personally committed an act of malicious prosecution, close quote. That's what we have here. Cables was adjudicated to have personally committed an act of malicious prosecution. It is against public policy to indemnify them. And they are a direct tortfeasor. The other point is the duty to indemnify. This is not a duty to defend case. If it were a duty to defend case, you could talk about potential for coverage, possibilities, theories that are being argued or asserted. Here we don't have that. We have an indemnity case. And the question of whether the indemnity obligation attaches is whether the insured is legally obligated to pay, in this case by a judgment, something that's covered. And the answer is they're not. And it's not an ambiguous judgment. There's no reason to go behind it. There are some other issues that I would just like to touch upon, and that is Judge Carter was certainly well within his discretion to exclude that stipulation. I'm tempted to say so-called because when you read it, it doesn't really say what it's being claimed to have said. If the stipulation were not excluded, would it make any difference? I don't think so. Not at all. I don't think it matters at all. And the reason is the judgment is the determining factor here. But I would like to point out that up to oral argument to the date Judge Carter issued his order, there was never any excuse offered whatsoever for not complying with the early disclosure requirements. And the burden under YETI is on parties seeking to be excused from that requirement to demonstrate one of the two justifications for excuse. There's no attempt to do that. I don't really understand why it even lays a glove on you, why it even matters. I don't understand why it would have mattered if it came in or didn't come in. I agree with you. It doesn't matter. The judgment is the judgment. I agree. I guess Carter's order went both ways anyway. He excluded many different merits. Yes, he did, I think. He was very careful to do that. I don't know that I need to go further, but I think another point I would just make quickly is the underlying complaints, the malicious prosecution complaints, are based primarily on alter ego theories in any event, not responding superior. But again, it doesn't matter because the judgment matters. If you can answer any questions, I'd be pleased to. Thank you, Your Honor. Thank you very much. Mr. Earle, if you get the last word, you're over the time, but we'll give you a minute. The Downey Venture case shows that Section 533 is not an absolute bar, even in a malicious prosecution case. It says that if you're held liable for someone else's malicious prosecution, if the law, by the way it operates, holds you liable to some extent, there in a responding at superior case, there would be full coverage. So 533 is not a complete bar. The public policies that underlie it don't mean it has to be a complete bar in every case. Downey Venture is one situation where in responding at superior, pure responding at superior case, 533 doesn't bar. Our position is that that logic should be taken one step further where the jury has made an allocation of fault. None of the cases that have been relied on, not Maxson, not Downey Venture, not Drazen, that apply Section 533 to a malicious prosecution case has there been two defendants with an allocation of fault. All that we're saying is that in applying Section 533 and saying how far it extends to bar coverage, it should not be an all or nothing basis. It should not be applied like the old doctrine of contributory fault where if you're 1 percent liable, then you lose all your insurance coverage. It should be coterminous with the amount of fault that's applied. If there's coverage for the part that you're not at fault for, there should be coverage. Otherwise, it punishes the victim and it's a windfall to the insurance company. Thank you. Thank you, Sherlock. Chairman, thank you. The case must argue to submit it. The last case this morning is 0356773 Alpha Therapeutic Corporation v. Federal Insurance Company. Each side will have ten minutes on this case. Good morning. Good morning.
judges: Brunetti, Silverman,tallman